UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ROLANDA SCHMIDT, | |
| Plaintiff, | Civil No. 23-2199 (JRT/JFD) |
| v. | |
| UNIVERSITY OF NORTHWESTERN-ST. PAUL, PHILIP VIERLING, DAVID ERICKSON, TANYA GROSZ, and SUE JOHNSON, *individually and as representatives of University of Northwestern-St. Paul*, | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

---

Damon L. Ward, **WARD LAW GROUP,** 4057 Brunswick Avenue, St. Louis Park, MN 55416, for Plaintiff.

Kathryn M. Nash and Richard C. Landon, **LATHROP GPM LLP**, 80 South Eighth Street, Suite 3100 IDS Center, Minneapolis, MN 55402, for Defendants.

Plaintiff Rolanda Schmidt brings this employment dispute against her former employer and its representatives for alleged discrimination and retaliation based on her race, gender, and age. Dr. Schmidt alleges that Defendants' conduct violated Title VII of the Civil Rights Act, Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1983, and state law under a negligent supervision theory. Defendants filed a Motion to Dismiss. Because it is premature to determine whether the ministerial exception or doctrine of laches apply as affirmative defenses to Dr. Schmidt's Title VII and negligent supervision

claims, the Court will deny Defendants' Motion to Dismiss in part.  Because Dr. Schmidt voluntarily agreed to dismiss the ADEA and Section 1983 claims, the Court will grant Defendants' Motion to Dismiss in part for those claims.

**BACKGROUND**

**I.    FACTS**

Rolanda Schmidt brings this civil rights action against the University of Northwestern-St. Paul ("UNW") and four of its employees: Philip Vierling, David Erickson, Tanya Grosz, and Sue Johnson.  The crux of Schmidt's allegations is that Defendants discriminated and retaliated against her based on her race, gender, and age in violation of federal and state law.  (*See* Not. of Removal, Ex. A ("Compl."), July 24, 2023, Docket No. 1-1.)

Dr. Schmidt, a Black woman, was hired by UNW, a co-educational Christian university, in July of 2017 as an Assistant Professor of Business.  (*Id.* ¶¶ 12–13; Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), at 2, Aug. 21, 2023, Docket No. 7.)  Although not confirmed by Dr. Schmidt, UNW asserts that all applicants, students, and employees are required to affirm the university's religious mission.  (Defs.' Mem., at 8.)

Throughout her employment at UNW, Dr. Schmidt alleges that she experienced constant and pervasive discrimination that resulted in a hostile work environment and caused her medical, emotional, and mental strain.  (*See* Compl. ¶¶ 11, 16–17, 18, 192, 197, 202–03.)  In support of her allegations, Dr. Schmidt describes multiple instances in

which her colleagues engaged in offensive and discriminatory conduct or else turned a blind eye to the hostility.

Mostly, Dr. Schmidt alleges instances of hostile conduct by Vierling, a white colleague. Such instances include Vierling making disrespectful comments about Dr. Schmidt's teaching techniques and qualifications; encouraging UNW students to make false statements about her in course evaluations; threatening to leave bad reviews on Dr. Schmidt's courses so that her contract would not be renewed; lying about other colleagues' comments regarding Dr. Schmidt; and making inappropriate and offensive comments to Dr. Schmidt's children. (*Id*. ¶¶ 34, 46–48, 50, 52, 68–69, 79, 81–86, 92, 119, 121.) In one instance, Dr. Schmidt alleges that Vierling came into her office and violently shouted at the top of his lungs because she changed a book for a class, after which Dr. Schmidt reported the conduct to UNW and filed a police report. (*Id.* ¶¶ 156–65.) Neither investigation resulted in cessation of the alleged conduct. (*Id.* ¶ 180.)

Dr. Schmidt also alleges that Erickson, former interim UNW president, contributed to the hostility by making derogatory comments about Dr. Schmidt's transgender daughter and enabling Vierling's antagonistic conduct. (*See id.* ¶¶ 34, 37–39, 191.) Dr. Schmidt reported her concerns to Johnson, who repeatedly minimized the hostility and disregarded Dr. Schmidt's complaints. (*See id.* ¶¶ 58–60, 96–97, 110.) Feeling desperate, Dr. Schmidt reached out to other colleagues for support, including Grosz, who also overlooked the severity of the problem. (*Id.* ¶¶ 132–34.)

In addition, Dr. Schmidt describes other harassing behaviors by anonymous perpetrators. These include the mysterious deletion of her students' grades from the university's computer system; an anonymous caller saying that she was a Black "bitch" and asking "if she really got her degree;" troubling invasions of her personal workspace; and highly offensive damage to her car, including someone smashing a hole and scrawling "Leave Nigger" on it. (*See id.* ¶¶ 40–41, 101–02, 105–07, 173, 185.)

Together, these experiences left Dr. Schmidt feeling targeted, ostracized, and fearful for her life. (*Id.* ¶¶ 42, 58, 88, 108, 134, 174.) After the university investigated the matter and found it inactionable, Dr. Schmidt was terminated in June of 2018. (*Id.* ¶¶ 13–18.)

## II. PROCEDURAL HISTORY

Dr. Schmidt filed a charge of discrimination with the Minnesota Department of Human Rights (MDHR) in January of 2019.[1] (Defs.' Mem. at 2.) MDHR cross-filed the charge with the Equal Employment Opportunity Commission (EEOC). (*Id.*) The MDHR dismissed the charge in August of 2021, and the EEOC dismissed the charge in March of

---

[1] In a motion to dismiss, the Court may consider materials outside the pleadings, such as documents that are attached to the complaint or necessarily embraced by the complaint, without converting the motion to dismiss into one for summary judgment. *See Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). Such documents may include those "whose content are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (internal citation omitted). Because neither party challenges the authenticity of them or objects to the Court's consideration of them at this stage, the Court may take judicial notice of the MDHR and EEOC exhibits without converting Defendants' Motion to Dismiss into one for summary judgment.

2023. (*Id.* at 3–4; *see also* Decl. of Richard C. Landon ("Landon Decl."), Exs. B, C, Oct. 24, 2023, Docket Nos. 20-2, 20-3.)

Thereafter, Dr. Schmidt initiated this action in Minnesota state court on June 21, 2023. (*See* Compl.) Initially, Dr. Schmidt's claims against UNW included alleged violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634; and state law under a negligent supervision claim. (*See* Compl. ¶¶ 193–228.) Dr. Schmidt also sought relief from Vierling, Erickson, Johnson, and Grosz for discrimination in violation of the Equal Protection Clause under 42 U.S.C. § 1983. (*Id.* ¶¶ 229–36.)

Defendants removed the Complaint to federal court. (*See* Not. of Removal, July 24, 2023, Docket No. 1.) Defendants subsequently filed a Motion to Dismiss, arguing that Dr. Schmidt's Title VII, ADEA, and negligent supervision claims are barred by the ministerial exception; that the doctrine of laches precludes the discrimination claims; that Dr. Schmidt failed to file the ADEA claim within the allotted time under the statute; and that the Section 1983 claim should be dismissed because Dr. Schmidt does not allege that any of the individual defendants are state actors. (Defs.' Mot. Dismiss, Aug. 21, 2023, Docket No. 5; Defs.' Mem. at 5, 12, 14.)

In response to Defendants' Motion, Dr. Schmidt defended her Title VII and negligent supervision claims. (Pl.'s Mem. Opp'n Mot. Dismiss, Oct. 10, 2023, Docket No.

17.)  However, she voluntarily waived her ADEA and Section 1983 claims.  (*See id.* at 4 n.2.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings."  *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and

conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II. ANALYSIS

As an initial matter, Dr. Schmidt's Title VII and negligent supervision claims must meet the plausible pleading standards to survive Defendants' Motion to Dismiss. Dr. Schmidt need not plead her prima facie case at this stage of the litigation, but she must at least state claims that are plausible on their face. See *Braden*, 588 F.3d at 594. Notably, Defendants do not challenge whether Dr. Schmidt's pleadings meet the plausibility standard. Construing the Complaint liberally and accepting all the factual allegations as true, the Court finds that Dr. Schmidt's claims allow the Court to draw the reasonable inference that UNW is liable for the misconduct alleged under Title VII and negligent supervision.

Having determined that Dr. Schmidt has met her pleading burden, next the Court must determine (1) whether the ministerial exception applies as an affirmative defense to the Title VII and negligent supervision claims; and (2) whether the doctrine of laches precludes the Title VII claim.

### A.   The Ministerial Exception

Defendants argue the ministerial exception precludes Dr. Schmidt's Title VII and negligent supervision claims. The "ministerial exception" is an affirmative defense grounded in the religion clauses of the First Amendment that prohibits courts from interfering with employment disputes between religious institutions and certain

employees.  The ministerial exception was first applied to religious or ministerial leaders. *See Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 188–89 (2012).   It has since been expanded to include teachers at religious institutions that perform religious functions.  *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020).

In *Hosanna-Tabor*, the Supreme Court recognized that courts are prohibited from interfering with religious institutions' employment decisions regarding their ministerial leaders. 565 U.S. at 188–89. Applying the ministerial exception to that case, the Supreme Court held that an elementary school teacher could not bring an employment discrimination claim against the religious school where she taught because the school held her out as a minister. *Id.* at 191. In support of this holding, the Supreme Court cited the teacher's title as "Minister of Religion, Commissioned," her extensive religious training, and her job responsibilities to teach religion and participate in religious activities with students. *Id.* at 191–92.

In *Our Lady of Guadalupe*, the Supreme Court expanded the ministerial exception to prohibit courts from intervening in employment disputes involving teachers who did not hold the title of minister at religious schools. 140 S. Ct. at 2066. Specifically, the Supreme Court held that religious responsibilities can impart a "ministerial" label to lay teachers at religious schools. *Id.* at 2057–59 (describing the qualifying religious responsibilities as providing religious instruction to students every day; preparing

-8-

students for Mass, communion, and confession; and worshipping with students).  In addition, the teachers' schools "expressly saw them as playing a vital part in carrying out the mission of the church," as the core mission of the schools was to educate and form students in the Catholic faith.  *Id.* at 2066.  The Supreme Court explained, "judges cannot be expected to have a complete understanding and appreciation of the role played by every person who performs a particular role in every religious tradition."  *Id.*  As such, "[a] religious institution's explanation of the role of such employees in the life of the religion in question is important."  *Id.*

Whether an individual is "ministerial" for purposes of the ministerial exception is a fact-intensive inquiry, and the Court finds that it would be premature to settle such inquiry at the motion to dismiss stage with the facts currently available.

UNW is a religious institution that provides Christian-centered higher education to its students.  UNW's mission statement provides that it "exists to provide Christ-centered higher education equipping students to grow intellectually and spiritually, to serve effectively in their professions, and to give God-honoring leadership in the home, church, community, and world."[2]  UNW asserts, and Dr. Schmidt does not deny, that all

---

[2] Similar to the MDHR and EEOC exhibits above, the Court may take judicial notice of UNW's mission statements and declarations without converting Defendants' Motion to Dismiss into one for summary judgement, and neither party challenges the authenticity of them or objects to the Court's consideration of them at this stage. *See Mission and Vision*, UNIVERSITY OF NORTHWESTERN-ST. PAUL, https://unwsp.edu/about-us/christian-values/mission-and-vision/ (last visited Nov. 15, 2023).

applicants, students, and employees are required to affirm UNW's Doctrinal Statement and Declaration of Christian Community.[3] The doctrinal statement provides that employees "agree to put Jesus Christ at the center of [their] lives and work," and that faculty members "dedicate [themselves] to [their] students and to each other in the community for the glory of God and the relentless and joyous pursuit of His truth."[4]

Based on its mission statements and declaration, UNW clearly views its faculty members as playing an important role in carrying out its core mission to provide Christian-centered higher education to students. However, UNW relies exclusively on those statements for the proposition that Dr. Schmidt was a "minister" for purposes of the exception. Other cases where courts have determined teachers to be "ministers" under the exception found additional evidence to be important in the analysis—such as whether the teacher provided religious instruction of any sort to the students or whether the teacher worshipped with the students.

For example, the teachers in *Our Lady of Guadalupe* not only had employment agreements that set out the schools' religious missions, like Dr. Schmidt, but they also provided religious instruction to students, prepared students for Mass, communion, and

---

[3] See *Doctrinal Statement*, UNIVERSITY OF NORTHWESTERN-ST. PAUL, https://unwsp.edu/about-us/christian-values/doctrinal-statement/ (last visited Nov. 15, 2023); *Declaration of Christian Community*, UNIVERSITY OF NORTHWESTERN-ST. PAUL, https://unwsp.edu/about-us/christian-values/declaration-of-christian-community/ (last visited Nov. 15, 2023) ("Declaration").

[4] *See Declaration*.

confession, and worshipped with students. 140 S. Ct. at 2057–59.[5] Another example is *Yin v. Columbia Int'l Univ.*, which UNW argues is instructive, because the lay teacher in that case participated in religious activities and programs at her school, required her students to pray together, integrated biblical materials into her courses, and prepared her students for ministry roles. 335 F. Supp. 3d 803, 808 (D.S.C. 2018). There are no such facts here. Plus, *Yin* was decided at the summary judgment stage. *Id.* at 809. Without more factual development, it is not possible for the Court to expand the definition of ministerial to what the Defendants are suggesting.

### B.     Doctrine of Laches

Defendants also argue that Dr. Schmidt's Title VII claim must be dismissed due to the doctrine of laches. The doctrine of laches is an equitable affirmative defense that may

---

[5] *See also Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 658–62 (7th Cir. 2018) (finding ministerial exception applied where Hebrew teacher taught her students about the Jewish faith and lead students in prayer); *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 940–42 (7th Cir. 2022) (finding guidance counselor was "minister" under exception in part because she was one of the school leaders responsible for its daily ministry and leading the students in prayer). *Cf. Palmer v. Liberty Univ., Inc.*, No. 6:20-31, 2021 WL 6201273, at *8 (W.D. Va. Dec. 1, 2021) (finding it insufficient for defendant to point to the university's religious policies as evidence that plaintiff undertook ministerial functions, as what matters is evidence of her undertaking ministerial actions), *vacated on other grounds, appeal dismissed*, 72 F.4th 52, 56 (4th Cir. 2023); *Ostrander v. St. Columba Sch.*, No. 3:21-0175, 2021 WL 3054877, at *6 (S.D. Cal. July 20, 2021) (holding that teaching at a Catholic school does not automatically make a second grade teacher a minister, even if the employment agreement provides that she is performing a ministerial role); *DeWeese-Boyd v. Gordon Coll.*, 163 N.E.3d 1000, 1002 (Mass. 2021), *cert. denied*, 142 S. Ct. 952 (2022) (holding that a sociology professor was not a minister under the ministerial exception).

be used to bar a claimant's Title VII claim if (1) the plaintiff unreasonably and inexcusably delayed commencing her action; and (2) the defendant suffered prejudice because of the delay. *Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 277 (8th Cir. 2004). Whether a delay is unreasonable or inexcusable depends on the facts of each case and is a matter within a district court's sound discretion. *Hukkanen v. Int'l Union of Operating Engr's, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993).

For the first element, NWU argues that Dr. Schmidt waited an unreasonably long time to file her Title VII claim—more than four years after she filed a charge of discrimination with the MDHR. NWU argues that Dr. Schmidt's delay was unreasonable for the following reasons: she waited nearly a full year after her termination before filing a charge with the MDHR; she did not file an action immediately after the MDHR dismissed that charge nearly 31 months later; and she waited to file this action until after the EEOC dismissed the same charge in March 2023. NWU expounds that Dr. Schmidt's EEOC charge terminated when MDHR dismissed her charge, even though she did not receive EEOC's dismissal letter until two years later. Ultimately, NWU asserts that Dr. Schmidt may not avoid laches by blaming the EEOC for her own delay in filing suit because, as the Eighth Circuit has instructed, the doctrine may apply when the delay in filing the action was the fault of the plaintiff or the administrative agency. *Whitfield v. Anheuser-Busch, Inc.*, 820 F.2d 243, 244–45 (8th Cir. 1987). In other words, NWU maintains that Dr. Schmidt had an obligation to monitor the progress of her charges filed with the MDHR and the

EEOC, and that she failed to meet that obligation by waiting for EEOC's dismissal letter. *See Hukkanen*, 3 F.3d at 286.

However, as both parties correctly acknowledge, the unreasonableness of a delay is a fact intensive inquiry. Whether it was unreasonable for Dr. Schmidt to file this action after receiving her final EEOC discharge notice depends on the facts of this case. Facts which, at this stage of the litigation, have not been fully developed. Further, the time of the delay here, although not insignificant, is substantially less than the elapsed time where courts applied the doctrine of laches. *See Midwestern Mach.*, 392 F.3d at 277 (applying laches where claimants waited eleven years to file suit); *see also Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 76–77 (3rd Cir. 1986) (collecting cases). Furthermore, in *Hukkanen*, the Eighth Circuit concluded that the district court did not abuse its discretion in declining to apply laches where the claimant waited four-and-a-half years to request a right-to-sue letter. F.3d at 286. Thus, the fact that four-and-a-half years have passed since Dr. Schmidt filed her charge with the MDHR does not by itself indicate that Dr. Schmidt's delay was unreasonable and inexcusable.

As for the second element, NWU asserts that it has been prejudiced by the delay by invoking the 31-month rule developed by the Minnesota Supreme Court. In *Beaulieu v. RSJ, Inc.*, an employee filed sex discrimination charges with the MDHR against her employer. 552 N.W.2d 695, 697 (Minn. 1996). The MDHR did not make a probable cause determination until 31 months later, even though it is required by statute to do so within

-13-

12 months. *Id.* at 698–99, 701–02. After 31 months, the MDHR filed a complaint against the employer, who moved to dismiss on the ground that the probable cause determination was untimely. *Id.* at 699. When the case reached the state supreme court, the court held in part that probable cause determinations made 31 months or more after a charge is filed is per se prejudicial and require dismissal of the complaint. *Id.* at 703 (footnote omitted).

NWU assumes this rule applies to this case because the delay in MDHR's probable cause determination was almost 31 months. However, 30 months and 29 days, MDHR's timeline in this case, does not explicitly fall under *Beaulieu*'s 31-month rule. Moreover, NWU claimed prejudice based only on the *Beaulieu* rule without providing other evidence of prejudice. Additionally, the District of Minnesota has found that a six-year delay between the initial charge of discrimination with the EEOC and the filing of the action was not prejudicial, even when the defendant argued that its "policies and personnel had changed, such that it no longer had the resources to successfully mount its defense." *E.E.O.C. v. Stan Koch & Sons Trucking, Inc.*, 557 F. Supp. 3d 884, 900 (D. Minn. 2021).

In summary, based on the facts as pleaded, after Dr. Schmidt received final notice from the EEOC that her discrimination charge was dismissed, she appropriately initiated this action in state court within the timeline permitted. Whether there are facts that would render this delay unreasonable and prejudiced NWU is a suitable issue for discovery.

## CONCLUSION

In this employment dispute action, Defendants filed a Motion to Dismiss the Complaint. Thereafter, Dr. Schmidt voluntarily waived her ADEA and Section 1983 claims, but her Title VII and negligent supervision claims remain. The Court finds that it is premature to determine whether the ministerial exception and doctrine of laches apply to the remaining Title VII and negligent supervision claims. Because the ministerial exception and the doctrine of laches were the only grounds on which Defendants challenged the Complaint, the Court will deny the Defendants' Motion to Dismiss in part. The Court will grant the Defendants' Motion to Dismiss in part to resolve the ADEA and Section 1983 claims voluntarily waived by Dr. Schmidt.[6]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 5] is **DENIED in part and GRANTED in part**.

DATED: February 7, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

---

[6] Dismissing the Section 1983 claim means that all claims against Vierling, Erickson, Johnson, and Grosz have been dismissed, as that is the only claim in which they are named as defendants in the Complaint. (*See* Compl. ¶¶ 229–36.) Therefore, UNW remains the only defendant moving forward in this action.