**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ROLANDA SCHMIDT,

           Civil No. 23-2199 (JRT/JFD)

      Plaintiff,

v.

           **ORDER GRANTING DEFENDANTS'**
UNIVERSITY OF NORTHWESTERN-ST.  **SECOND MOTION FOR SUMMARY**
PAUL,              **JUDGMENT**

      Defendant.

---

Damon L. Ward, **WARD LAW GROUP**, 4057 Brunswick Avenue, St. Louis Park, MN 55416, for Plaintiff.

Richard C. Landon and Kathryn M. Nash, **LATHROP GPM LLP**, 80 South Eighth Street, Suite 3100, Minneapolis, MN 55402, for Defendant.

Plaintiff Rolanda Schmidt brought this employment dispute against her former employer, University of Northwestern-St. Paul ("University"), and some of its employees for discrimination and retaliation based on race and gender. The University now brings a motion for summary judgment with respect to Schmidt's only remaining claim: a negligent supervision claim against the University. Because Schmidt has failed to allege the type of physical injury that is required to support a negligent supervision claim under Minnesota law, the Court will grant the University's motion.

**BACKGROUND**

**I.    FACTS**

The facts of this case have been extensively summarized in the Court's orders addressing the motion to dismiss and the first motion for summary judgment.  *Schmidt v. Univ. of Nw.-St. Paul*, Civ. No. 23-2199, 2024 WL 477166 (D. Minn. Feb. 7, 2024) ("*Schmidt I*"); *Schmidt v. Univ. of Nw.-St. Paul*, Civ. No. 23-2199, 2025 WL 1592345 (D. Minn. June 5, 2025) ("*Schmidt II*").  The Court will, therefore, only briefly summarize the facts related to Schmidt's negligent supervision claim.

Schmidt alleges that, throughout her employment at the University, she experienced constant and pervasive discrimination that caused her medical, emotional, and mental strain.  (*See* Not. Removal, Ex. A ("Compl.") ¶¶ 11, 16–17, 18, 192, 197, 202–03, July 24, 2023, Docket No. 1-1.)  In her Complaint, Schmidt describes multiple instances in which her colleagues engaged in offensive and discriminatory conduct or turned a blind eye to the hostility.

Schmidt also describes harassing behaviors by anonymous perpetrators including the mysterious deletion of her students' grades from the University's computer system (*id.* ¶ 98, 102); an anonymous caller who "said she was a [B]lack 'bitch' and asked if she really got her degree" (*id.* ¶¶ 105); troubling invasions of her personal workspace (*see id.* ¶¶ 40–41, 106); and highly offensive damage to her car including someone smashing a

hole in it (*id* ¶ 173)[1] and—in a separate instance—someone scrawling "Leave Nigger" on her vehicle (*id.* ¶ 185).[2]

Schmidt further described two specific instances with Philip Vierling, an employee of the University.  (*See id.* ¶ 3.)  On January 11, 2018, Schmidt alleges that "Vierling came into [her] office . . . walked up to the corner of her desk nearest to her and said, 'Is this the book you're going to be using for my class?'"  (*Id.* ¶ 155–56.)  When Schmidt confirmed that it was, he "began turning the pages slowly at first and then very fast and loudly.  Vierling then raised his voice to the top of his lungs and shouted 'YOU CANNOT DO THAT' and continued ranting loudly about how Dr. Schmidt did not have the authority to change the book."  (*Id.* ¶ 157.)  Schmidt describes that she was "terrified" and his "face was red and he was very, very angry."  (*Id.*)  Schmidt also notes that Vierling had "told her earlier the last year that he was always 'packing' so she wasn't sure if he'd actually pull out a gun."  (*Id.* ¶ 160.)

---

[1] In her declaration, Schmidt also offers that "[f]ootprints in the snow appeared to lead from the side of the building near offices associated with Defendants and my office."  (Decl. of Rolanda Schmidt ¶ 33, Jan. 21, 2026, Docket No. 95.)  HR told her that the damage was "an 'act of God' and stated there was minimal video footage."  (*Id.*)

[2] The Court generally avoids repeating racial slurs and obscenities.  In this case, however, the Court concludes that quoting the language used is necessary to ensure clarity and to accurately report the facts as set forth in the Complaint.

On January 12, 2018, around 12:30 pm, Schmidt "heard a loud bang on her [office] wall" and "texted her husband" that she thought it was Vierling.[3]  (*Id.* ¶¶ 167, 169.) Schmidt does not allege that Vierling entered her office or that she confirmed he was the one who had banged on her office wall.

Schmidt alleges that she "experienced severe emotional distress, humiliation, anxiety, and ongoing fear."  (Decl. of Rolanda Schmidt ¶ 42, Jan. 21, 2026, Docket No. 95.) She further alleges that the "stress manifested physically, including shaking, loss of sleep, headaches, gastrointestinal symptoms, and other stress-related physical effects."  (*Id.* ¶ 43.)

## II.    PROCEDURAL HISTORY

The full procedural history of this case may be found in the Court's prior orders. *See Schmidt I*, 2024 WL 477166, at *2–3; *Schmidt II*, 2025 WL 1592345, at *3.

Briefly, Schmidt initially brought three claims against the University (Violation of Title VII, Violation of the Age Discrimination in Employment Act, and Negligent Supervision).  (*See* Compl. ¶¶ 193–228.)  Schmidt also brought a sole claim against employees of the University under § 1983.  (*Id.* ¶¶ 229–236.)

At the motion to dismiss stage, the Court dismissed Schmidt's claims under § 1983 and the Age Discrimination in Employment Act as voluntarily waived.  *Schmidt I*, 2024 WL

---

[3] In her declaration, Schmidt notes that Vierling's "office was next to mine."  (Decl. of Rolanda Schmidt ¶ 34 (d).)

477166.  The University then moved for summary judgment, which the Court granted with respect to Schmidt's Title VII claim, concluding that the ministerial exception bars the Court's consideration of this claim.  *Schmidt II*, 2025 WL 1592345.  Schmidt's only remaining claim is a negligent supervision claim against the University.  (*See* Compl. ¶¶ 209–228).  The University moves for summary judgment with respect to this claim.

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  "When opposing parties tell two different stories, one

of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.   ANALYSIS

The University moves for summary judgment on two alternative grounds: (1) Schmidt has failed to allege the type of physical injury that is required to support a negligent supervision claim under Minnesota law or (2) Schmidt's negligent supervision claim is barred by the ministerial exception.  The Court will address each ground in turn.

### A.   Physical Injury

"Negligent-supervision claims are premised on an employer's duty to control employees and prevent them from intentionally or negligently inflicting personal injury." *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007) (citing *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 534 (Minn. 1992)).  The employer's duty is limited to the "prevention of bodily harm."  *Id.*  That is, "a viable negligent-supervision claim must allege physical injury."  *Id.*; *see also Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996) ("[T]here must be some evidence of a threat of physical injury or actual physical injury . . . .")

Although Schmidt states in her Complaint that she was "caused severe harm, including physical injury and other emotional and mental distress" (Compl. ¶ 223), she does not allege any facts to support her allegation that she suffered a physical injury unrelated to her emotional distress.  But for negligent supervision claims, "emotional

distress is not a physical injury." *Johnson*, 734 N.W.2d at 278.[4]  Allegations that a plaintiff "experienced emotional distress and resulting physical symptoms" are **not** sufficient to support a claim of "physical injury."  *Id.* (citing *Ludwig v. Northwest Airlines, Inc.*, 98 F.Supp.2d 1057, 1072 (D. Minn. 2000)).  In short, Schmidt has not alleged physical injury.

Schmidt also failed to allege sufficient facts to support that "it was foreseeable . . . that [an] employee posed a threat of physical injury . . . ."  *Id.*  The only employee of the University about whom Schmidt provides specific factual allegations related to her physical safety is Vierling.  Although it is undisputed that Vierling yelled at Schmidt and caused her significant emotional distress, Schmidt has not pled any facts that would support a finding that Vierling (or any other employee of the University) threatened her with physical injury.  To be sure, if there was evidence that the damage to Schmidt's car had been caused by an employee or that the racial epithet had been written by an employee, the outcome might be different.  But no alleged facts support a threat of physical injury other than a statement made months earlier in a different context by Vierling that he often concealed and carried.  *See e.g.*, *McKenzie v. Lunds, Inc.*, 63 F. Supp. 2d 986, 1007 (D. Minn. 1999) ("Without some showing—that is absent here—which reasonably suggests that the Defendant knew, or should have known, that the allegedly offending employee had a propensity to cause harm to others, the Plaintiff's claim[s] of

---

[4] *See also Bruchas*, 553 N.W.2d at 443 (applying Minnesota law and noting that the Minnesota "supreme court indicated in *Semrad* that some form of physical injury is required to recover under a claim of negligent supervision").

negligent hiring [and supervision] cannot survive the Defendant's Motion for Summary Judgment.")

Because Schmidt failed to allege the type of physical injury that is required to support a negligent supervision claim under Minnesota law, the Court will grant the University's motion for summary judgment.

### B.    Ministerial Exception

Since the Court concludes that Schmidt has failed to allege the type of physical injury that is required to support a negligent supervision claim under Minnesota law, the Court need not address whether Schmidt's negligent supervision claim is barred by the ministerial exception.[5]    Nevertheless, the Court remains troubled about potential expansive use of the ministerial exception to shield an employer from liability under well-established employment law principles and circumstances unrelated to any interference with religious doctrines.  There is a line to be drawn somewhere.  *See e.g.*, *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 989–91 (7th Cir. 2021) (Hamilton, J., dissenting) (arguing that a line between tangible employment actions and hostile

---

[5] The "ministerial exception" is an affirmative defense grounded in the religion clauses of the First Amendment that prohibits courts from interfering with employment disputes between religious institutions and their "ministers."  *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188–89, 195 n.4 (2012).  Though the ministerial exception "does not mean that religious institutions enjoy a general immunity from secular laws, . . . it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission."  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020).  The Court also reiterates its concern about expansive use of the "minister" designation in a manner which can interfere with employees' rights in the workplace.

environment claims fits the purposes of the ministerial exception). Judge Hamilton's dissent reflects the Court's views concerning line-drawing regarding these important issues.

But this case, as pled, does not present facts under which the Court needs to resolve the "conflict between two of the highest values in our society and legal system: religious liberty and non-discrimination in employment." *Id.* at 996. The Court declines to resolve whether a negligent supervision claim is barred by the ministerial exception.

## CONCLUSION

Because Schmidt has failed to allege the type of physical injury that is required to support a negligent supervision claim under Minnesota law, the Court will grant the University's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant University of Northwestern—St. Paul's Motion for Summary Judgment on Plaintiff's Negligent Supervision Claim (Docket No. [75]) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 15, 2026
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge